## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LA CAMPAGNA INC., D/B/A LA CAMPAGNA RISTORANTE, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ERIE INSURANCE GROUP, <br><br> Defendant. | **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff La Campagna Inc., d/b/a La Campagna Ristorante ("Plaintiff" or "La Campagna") brings this Complaint on behalf of itself and all others similarly situated (the "Class"), alleging relief against Defendant Erie Insurance Group ("Defendant" or "Erie") and avers as follows:

## **NATURE OF THE CASE**

1.      This is a class action seeking declaratory relief arising from Plaintiff and Class members' contracts of insurance with Defendant.

2.      In light of the global coronavirus disease 2019 ("COVID-19") pandemic and state and local government orders ("Civil Authority Orders") mandating that all non-essential in-store businesses must shut down nationwide, restaurants, including but not limited to Plaintiff's business, have suffered significant business losses.

3.      Plaintiff and Class members' insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

4.      As a result, Plaintiff and Class members are entitled to declaratory relief that their businesses are covered for all business losses that have been incurred in an amount greater than $5,000,000.00.

## JURISDICTION

5.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the action is a class action; (3) there are members of the Class who are diverse from Defendant; and (4) there are more than 100 Class members.

6.      This Court has personal jurisdiction over Erie.  Erie's principal place of business and headquarters is located at 100 Erie Insurance Place, Erie, PA 16530.  Further, at all relevant times, Erie has engaged in substantial business activities in the Commonwealth of Pennsylvania. Erie transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania. Defendant purposefully availed itself of personal jurisdiction in Pennsylvania because it contracted to provide insurance to Plaintiff and Class members in Pennsylvania which is the subject of this case.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Plaintiff and Defendant are Pennsylvania corporations and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8.      At all relevant times, Plaintiff La Campagna has been authorized to do business in the Commonwealth of Pennsylvania.  La Campagna Inc. is located at 101 Hardwood Lane, Warminster, Pennsylvania 18974 and owns, operates, manages, and/or controls La Campagna Ristorante located at 1179 West Thatcher Road in Quakertown, Pennsylvania 18951 (the "Covered Property").

9.      Defendant Erie is an insurance carrier headquartered at 100 Erie Insurance Place, Erie, PA 16530 and, among other things, provides business interruption insurance to Plaintiff and Class members.

10.     At all relevant times, Defendant issued an insurance policy to Plaintiff (policy number is Q40 2250619 A) that included coverage for, among other things, business interruption losses, incurred by Plaintiff from April 22, 2019 until April 22, 2020. *See* Policy Declaration page, attached hereto as Exhibit 1.  Plaintiff has renewed this Policy and is covered by Defendant under the same terms for the period April 22, 2020 through April 22, 2021 and has already begun making payments to Defendant for this coverage.

11.     The policy, in effect at the time the Covered Property sustained business interruption losses arising out of the Civil Authority Orders described herein, includes coverage for, among other things, income protection, business personal property, civil authority and extended business income.

12.     Plaintiff submitted a claim for losses which was assigned Claim No. A00002511147.  On March 25, 2020, Defendant provided Plaintiff a letter denying any and all claims.  *See* Denial Letter (page 1 only), attached hereto as Exhibit 2.

13.     Upon information and belief, Erie will assert its insurance policies do not provide coverage for business interruption closures for all similarly situated Class members because of the exclusion in its policies "by or resulting from any virus, bacterium, or other microorganism" (the "Virus Exclusion").  Erie will also assert that there is no coverage under the policy's Business Income, Extra Expense, Civil Authority, or any other applicable provisions because they each require direct physical loss of or damage to property, which Erie will claim does not exist here or, upon information and belief, for any similarly situated Class member. *Id.*  On information and

belief, Erie intends to deny coverage to all Class members that file a business interruption claim in these circumstances.

## FACTUAL BACKGROUND

### I.    Insurance Coverage

14.    Plaintiff and Class members faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business income loss for property loss or damage.

15.    The terms of the Policy explicitly provide the insured with insurance coverage for income protection, along with any necessary extra expenses incurred, when access to the Insured's properties is specifically prohibited by Civil Authority Orders.    This additional coverage is identified as coverage under "Civil Authority" and states in part as follows:

### C.    Additional Coverages

### 1.    Civil Authority

When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" provided that both of the following apply:

a.    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" are within that area but are not more than one mile from the damaged property; and

b.    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

16.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy provides coverage for all covered losses, including but not limited to direct physical loss and/or direct physical damage, unless a loss is specifically excluded or limited in the Policy.

17.     The Policy also provides coverage for damages resulting from "interruption of business" when there is property loss or damage.

18.     The Policy's Virus Exclusion does not apply to the closure of Plaintiffs' businesses as a result of the orders issued by a Civil Authority due to the COVID-19 pandemic.

19.     Nonetheless, based on information and belief, Defendant has accepted policy premiums paid by Plaintiff and the Class with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the insured businesses be shut down, or any related property damage.

20.     On information and belief, Defendant asserts any losses resulting from property damage or from Civil Authority Orders to cease normal business operations are not covered under the terms of the Policy's Virus Exclusion.  Defendant is wrong.  The COVID-19 pandemic has caused Plaintiff and the proposed Class property damage and physical loss.  Moreover, the Civil Authority Orders have also caused Plaintiff and the proposed Class to suffer compensable property damage and business losses.  Further, and as a result, the aforementioned exclusion does not apply to the COVID-19 pandemic.

## II.    The COVID-19 Pandemic

21.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage.  It is clear that contamination of the Insured Properties would be a direct physical loss requiring remediation to clean the surfaces of the dental practice.

22.    On information and belief, the virus that causes COVID-19 remains stable and transmittable: in airborne aerosols for up to three hours; on copper for up to four hours; on cardboard for up to 24 hours; and on plastic and stainless steel for up to two to three days. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

23.    The CDC has issued a guidance recommending that gatherings of more than 10 people must not occur.  People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

24.    The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

25.    China, Italy, France, and Spain have implemented procedures requiring the cleaning and disinfection of public areas prior to allowing them to re-open publicly due to COVID-19 contamination.

III.    **Civil Authority**

A.    <u>Pennsylvania</u>

26.    On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth as a result of COVID-19.  *See* Exhibit 3.

27.    On March 19, 2020 Governor Wolf issued an Order requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control.";

https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (last visited April 7, 2020).

28.    On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties.  *See* Exhibit 4.  On that same date, the Pennsylvania Department of Health issued a similar Order, noting that "operation of non-life-sustaining businesses present the opportunity for unnecessary gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID–19."  *See* Exhibit 5.

29.    On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay at Home Order to the entire Commonwealth of Pennsylvania. *See* Exhibit 6.

30.    The Pennsylvania Supreme Court recently clarified the Governor's Orders and supported Plaintiff's position that physical loss and damage exists resulting in coverage here.  *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

31.    On April 20, 2020, Governor Wolf and Pennsylvania Secretary of Health extended the statewide stay-at-home orders through Friday, May 8, 2020. https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-extend-statewide-stay-at-home-order-until-may-8/ (last visited April 22, 2020).

32.    On May 7, 2020, Governor Wolf again extended the statewide stay-at-home orders through June 4, 2020. *See* https://www.governor.pa.gov/wp-content/uploads/2020/05/20200507-TWW-Stay-at-Home-Order-Amendment.pdf (last visited May 31, 2020)

B.    Other States

33.    The shut-down Civil Authority Orders issued by Pennsylvania authorities covering Pennsylvania non-essential businesses are similar to Civil Authority Orders that have been issued nationwide by state and local civil authorities.  *See* https://www.wsj.com/articles/a-state-by-state-

guide-to-coronavirus-lockdowns-11584749351. Defendant operates the District of Columbia and

in the following states:

1. *Illinois*

   - **Travel outside home:** Only for essential needs/work.

   - **Gatherings:** 10-person limit.

   - **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

   - **Quarantines:** No statewide directive.

   - **Bars/restaurants:** Dine-out only.

   - **Beaches/parks:** State parks, fish and wildlife areas, recreational areas and historic sites are closed.

2. *Indiana*

   - **Travel outside home:** Only for essential needs/work.

   - **Gatherings:** 10-person limit.

   - **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

   - **Quarantines:** No statewide directive.

   - **Bars/restaurants:** Dine-out only.

   - **Beaches/parks:** Hiking, biking, fishing, boating, birding, hunting and camping are allowed with social distancing.

3. *Kentucky*

   - **Travel outside home:** Travel outside the state is restricted to essential needs/work.

   - **Gatherings:** Mass gatherings prohibited; smaller gatherings are allowed with social distancing.

   - **Businesses:** Nonessential retail must close.

- **Quarantines:** Anybody coming in from out of state—including residents—must self-quarantine for 14 days upon return.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks closed for overnight stays.

4. *Maryland*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Senior-citizen activities centers are closed.

- **Quarantines:** People traveling into Maryland from anywhere outside Maryland are required to self-quarantine for 14 days with limited exceptions. (Guidance)

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State park beaches are closed. Some parks remain open.

5. *New York*

- **Travel outside home:** Only for essential needs/work. Individuals age 70 and older and those with compromised immune systems must stay home and limit home-visitation to immediate family members or close friends.

- **Gatherings:** Nonessential gatherings are prohibited.

- **Businesses:** Nonessential businesses limited to minimum operations or remote work. (Guidance)

- **Quarantines:** No mandatory quarantine for out-of-state travelers. Mandatory quarantines for people who have been in close contact with a Covid-19 patient.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Social distancing at state parks.

6. *North Carolina*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** People may go to public parks and outdoor recreation areas unless locally restricted.

7. *Ohio*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses and operations must cease all activities except minimum basic operations.

- **Quarantines:** Travelers arriving in Ohio should self-quarantine for 14 days with limited exceptions.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Wildlife areas, forests and nature preserves remain open.

8. *Pennsylvania*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings are generally prohibited.

- **Businesses:** Non-life-sustaining businesses must close or operate remotely.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Trails, lakes, roads and parking are limited to "passive and dispersed recreation."

9. *Tennessee*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Social gatherings of 10 or more people prohibited.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Most state parks have reopened for day-use only.

*10. Virginia*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Recreation and entertainment businesses must close.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches are closed except for fishing and exercising. State parks are open for day-use activities. Campgrounds are closed.

*11. West Virginia*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit with some exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Two-week mandatory quarantines for people traveling into West Virginia from areas of substantial community spread of Covid-19.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Park lodges, cabins and campgrounds are closed.

*12. Wisconsin*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All public and private gatherings are prohibited with limited exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No mandatory quarantine for out-of-state travelers. Self-quarantine recommended for out-of-state travelers.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Many state parks are closed. Campgrounds are closed.

34.    Further, on April 10, 2020 President Trump indicated his support insurance coverage for business loss like that suffered by Plaintiff and the proposed Class:

REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I did not always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid.* You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I do not see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I do not see it. I do not see it referenced. And they do not want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We ca not let that happen.

https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

35.    The President is articulating a few core points:

    a.    Business interruption is a common type of insurance.

    b.    Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c.    The COVID-19 pandemic should be covered unless there is a specific exclusion for pandemics.

    d.    If insurers deny business loss coverage due to the COVID-19 pandemic, they would be acting in bad faith.

36.    The Civil Authority Orders and proclamations referenced herein, as they relate to the closure of all "non-life- sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property.  This is particularly true for businesses such as Plaintiff's, where customer or client interaction and personal contact results in a heightened risk of the property becoming contaminated.

**IV.    Impact on Plaintiff and the Class**

37.    Prior to March 16, 2020, Plaintiff was opened to all customers from Wednesday through Saturday from 5 p.m. to 11:30 p.m., and Friday Sunday, 5 p.m. to 9 p.m.  As a result of the Orders referenced herein, Plaintiff shut its doors to customers on March 16, 2020 and continues to be shut down for on-premises dining.  *See* http://www.lacampagnabucks.com (last visited June 3, 2020).  Since the Civil Authority Order requiring its shutdown, La Campagna continues to offer carryout and delivery services from 4 p.m. to 7 p.m. Wednesday through Sunday – LIMITED MENU.  During this time, its indoor dining room and outside dining remain closed to customers.

38.    Plaintiff's business loss occurred on March 16, 2020 when Pennsylvania Civil Authorities required all businesses to cease non-essential operations at the end of the business day on March 16, 2020.

39.     As a further direct and proximate result of the Orders, Plaintiff was forced to lay off two employees in March and April, but has since hired these employees back on a limited basis to assist with carryout and takeout orders.

40.     Plaintiff's business, like that of other Class members, is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the restaurant, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

41.     Businesses like the Plaintiff's are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to other types of businesses.

42.     Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another.

43.     A declaratory judgment determining that the insureds are entitled to business loss coverage under the Policy is necessary to prevent Plaintiff and Class members from being left without bargained-for insurance coverage required to ensure the survival of their child care centers due to the Civil Authorities' response to the COVID-19 pandemic.  As a result of these Civil Authority Orders, Plaintiff and Class members have incurred, and continue to incur, among other things, a substantial loss of business income and additional expenses, which losses are covered under the terms of Defendant's insurance policies.

## CLASS ALLEGATIONS

44.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) on behalf of the following Class:

> All restaurants that have suffered business interruption and lost income as a result of Civil Authority Orders issued in response to the COVID-19 pandemic.

45.    Upon information and belief, Defendant does not cover business interruption in contravention to the uniform language contained in the insurance policies it has issued to restaurants.

46.    The exact number of the Class members is unknown as such information is in exclusive control of Defendant.  However, due to the nature and commerce involved, Plaintiff believes the Class consists of thousands of insureds nationwide, making joinder of the Class members impractical.

47.    Common questions of law and fact affect the right of each Class member.  Plaintiff is seeking Declaratory Relief for all Class members with similar polices to Plaintiff.  Declaratory relief will permit adjudication of the rights of all parties as to whether Defendant's policies provide coverage for business interruptions losses the Class has suffered as a result of property loss and the Civil Authority Orders.

48.    Common questions of law and fact that affect the Class members include, but are not limited to:

   a.    Whether Defendant was legally obligated to pay for business interruption as a result of Civil Authority Orders issued in response to the COVID-19 pandemic;

   b.    Whether Plaintiff and Class members have suffered physical "loss" or damage in accordance with the terms and conditions of Defendant's business interruption insurance policies;

   c.    Whether Plaintiff and Class members are excluded from coverage for losses they suffered due to the Civil Authority Orders as a result of the Virus Exclusion(s) contained in Defendant's insurance policies;

   d.    Whether Defendant is justified in denying Plaintiff and Class members' claims.

49.     The claims and defenses of Plaintiff, as a representative plaintiff, are typical of the claims and defenses of the Class because Defendant wrongfully denied that its policy covers claims to Plaintiff and the Class members.

50.     Plaintiff, as a representative plaintiff, will fairly and adequately assert and protect the interests of the Class.

>           a.     Plaintiff has hired attorneys who are experienced in prosecuting class actions and will adequately represent the interests of the Class; and

>           b.     Plaintiff has no conflict of interest that will interfere with the maintenance of a class action.

51.     A class action provides a fair and efficient method for adjudication of the controversy for the following reasons:

>           a.     Prosecution of separate actions by individual Class members would create a risk of inconsistent and varying results against Defendant when confronted with incompatible standards of conduct; and

>           b.     Adjudications with respect to individual Class members could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications and substantially impair their ability to protect their interests.

52.     In addition to denying claims that have been filed like the Plaintiff's here (*see* Ex. 2), Defendant has taken steps to discourage the Class from submitting claims under their policies. Upon information and belief, Defendant has sent a uniform letter to all insurance brokers and has advised them to advise Class members that insureds do not have a claim under the terms of their policy(ies).  For this reason, Declaratory relief for the entire class is appropriate and necessary.

## **CAUSE OF ACTION**

## **DECLARATORY RELIEF**

53.     Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

54.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

55.    An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the terms of the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

a.    The Civil Authorities' Orders constitute a prohibition of access to Plaintiff's Covered Property;

b.    The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

c.    The Policy's Virus Exclusion does not apply to the business losses incurred by Plaintiff here that are proximately caused by the Civil Authority Orders issued in response to the COVID-19 pandemic;

d.    The Civil Authorities' Orders trigger coverage under the terms of the Policy;

e.    The Policy provides coverage to Plaintiff for any current and future Civil Authority closures of its businesses due to physical loss or damage directly or indirectly from the COVID-19 pandemic under the Civil Authority coverage parameters; and

f.    The Policy provides business income coverage in the event that the COVID-19 pandemic directly or indirectly causes physical loss or damage at the Covered Property or immediate area of the Covered Property.

56.    Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

57.    Plaintiff seeks a Declaratory Judgment to determine whether the Civil Authority Orders constitute a prohibition of access to Plaintiff's Covered Property as Civil Authority as defined in the Policy.

17

58.    Plaintiff further seeks a Declaratory Judgment to affirm that the Civil Authority Orders trigger coverage.

59.    Plaintiff further seeks a Declaratory Judgment to affirm that Defendant's Policies provide coverage to Plaintiff and the Class for any current and future business personal property losses, loss of business income, and extended business income losses as a result of Civil Authority Orders affecting the operation of their business due to physical loss or damage caused by the COVID-19 pandemic.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the proposed Class herein prays as follows:

a.    For a declaration that the Civil Authorities Orders constitute an insured impairment on the operation of Plaintiff's Covered Property.

b.    To certify the proposed Class under Rule 23(b)(2).

c.    To direct notice to the Class under Rules 23.

d.    For a declaration that the Civil Authorities' Orders constitute the type of prohibition of access or restriction on business operations that is defined in the Policy.

e.    For a declaration that the Civil Authorities' Orders trigger coverage under the Policy.

f.    For a declaration that the Virus Exclusion in the policy does not prohibit coverage.

g.    For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued Civil Authority closures of its businesses due to physical loss or damage directly or indirectly from the COVID-19 pandemic under the Policy's Civil Authority coverage parameters.

h.    For a declaration that the Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property.

i.    For such other relief as the Court may deem proper.

## <u>TRIAL BY JURY IS DEMANDED</u>

Plaintiff hereby demands trial by jury.


Dated: June 8, 2020                              Respectfully submitted,

                                                 */s/ Richard M. Golomb*
                                                 Richard M. Golomb, Esq.
                                                 Kenneth J. Grunfeld, Esq.
                                                 **GOLOMB & HONIK, P.C.**
                                                 1835 Market Street, Suite 2900
                                                 Philadelphia, PA 19103
                                                 Telephone: (215) 985-9177
                                                 Facsimile: (215) 985-4169
                                                 rgolomb@golombhonik.com
                                                 kgrunfeld@golombhonik.com

                                                 Arnold Levin, Esq.
                                                 Laurence Berman, Esq.
                                                 Frederick Longer, Esq.
                                                 Daniel Levin, Esq.
                                                 Michael Weinkowitz, Esq.
                                                 **LEVIN SEDRAN & BERMAN LLP**
                                                 510 Walnut Street, Suite 500
                                                 Philadelphia, PA 19106-3697
                                                 Telephone: (215) 592-1500
                                                 Facsimile: (215) 592-4663
                                                 alevin@lfsblaw.com
                                                 flonger@lfsblaw.com
                                                 dlevin@lfsblaw.com

                                                 W. Daniel "Dee" Miles, III
                                                 Rachel N. Boyd
                                                 Paul W. Evans
                                                 **BEASLEY, ALLEN, CROW, METHVIN,
                                                 PORTIS & MILES, P.C.**
                                                 P.O. Box 4160
                                                 Montgomery, AL 36103
                                                 Telephone: (334) 269-2343
                                                 Facsimile: (334) 954-7555
                                                 dee.miles@beasleyallen.com
                                                 rachel.boyd@beasleyallen.com
                                                 paul.evans@beasleyallen.com

                                                 ***Counsel for Plaintiff and the Class***